UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| HOWARD VENTURE LLC d/b/a Dakota Beef, | ) | CIV. 10-4072-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING |
| vs. | ) | TEMPORARY RESTRAINING |
| | ) | ORDER |
| SCOTT D. LIVELY, and LIVELY FOODS LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Dakota Beef, and defendant, Scott Lively, entered into an employment agreement that prohibited Lively from disclosing confidential information, soliciting Dakota Beef customers, and competing against Dakota Beef in the organic beef business. Dakota Beef alleges that after Lively was fired by Dakota Beef, Lively began soliciting Dakota Beef's customers and otherwise directly competing against Dakota Beef by selling organic beef to Dakota Beef's customers. Dakota Beef moves for a temporary restraining order and a preliminary injunction to enjoin Lively and Lively Foods LLC, from breaching the terms of the employment agreement. The court finds that a temporary restraining order is appropriate to prevent potentially irreparable injury to Dakota Beef and temporarily protect its interests as set forth in the employment agreement.

**BACKGROUND**

The facts as alleged by Dakota Beef are:

Dakota Beef processes and sells organic beef products on a nationwide basis. On January 23, 2006, Dakota Beef hired Lively as its Chief Executive Officer. As a condition of employment, Lively signed an employment agreement containing a confidentiality provision, a non-competition provision, and a non-solicitation provision. On November 20, 2008, Dakota Beef terminated Lively from its employment. On May 17, 2010, Lively and Lively Foods began processing organic cattle. Shortly before June 17, 2010, Dakota Beef verified that Lively Foods was selling organic beef products to one of Dakota Beef's customers and soliciting business from other customers as well. This motion for a temporary restraining order and preliminary injunction followed.

**DISCUSSION**

When ruling on a motion for a temporary restraining order, the court must consider: (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury a temporary restraining order would inflict on other parties; (3) the likelihood of success on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

## 1.    Threat of Irreparable Harm

The court finds that there is a threat of irreparable harm to Dakota Beef if Lively and Lively Foods are allowed to breach the terms of the employment agreement because Dakota Beef is in a business that relies heavily on customer lists and customer goodwill developed over a substantial period of time.  See Walling Chem. Co. v. Bigner, 349 N.W.2d 647, 650 (S.D. 1984). Dakota Beef will unlikely receive full compensation for any damages sustained because a damages award is limited to those damages that are proven to a reasonable degree of certainty.  See id. at 651.  Thus, Dakota Beef is likely to receive insufficient compensation as a result of Lively's actions because of the inherent difficulty with proving its losses based on what might have otherwise happened in the future between Dakota Beef and its customers and competitors.

There is an additional threat of irreparable harm to Dakota Beef if, as it asserts, Lively possesses Dakota Beef's confidential information.  In competing against Dakota Beef and soliciting its customers, it is likely that Lively will either intentionally or unintentionally disclose that information to outside parties in order to gain an advantage in the organic beef market.  If any confidential information is disclosed to an improper party, the ability for Dakota Beef to obtain legal or equitable relief would likely be impossible. Therefore, the first factor, the threat of irreparable harm, weighs in favor of granting the temporary restraining order.  See Planned Parenthood Minn.,

3

N.D., S.D. v. Rounds, 530 F.3d 724, 732 n.5 (8th Cir. 2008) (en banc) (" 'The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.' " (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959))).

### 2.    Balance of the Harms

The second factor calls for the court to balance the harms that would result in the following scenarios:  (1) if the temporary restraining order was improperly denied because Dakota Beef prevailed on the merits of the case; and (2) if the temporary restraining order was improperly granted because Lively and Lively Foods prevailed on the merits of the case.  See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) ("[W]hile cases frequently speak in the short-hand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied."); see also Hillerich & Bradsby Co. v. Christian Bros., Inc., 943 F. Supp. 1136, 1142 (D. Minn. 1996) (balancing the harms by looking at what the harm to the defendant would be if the injunction were "improperly granted").

If the temporary restraining order was improperly denied, Dakota Beef's competitive place in the organic beef marketplace would be diminished, and its confidential information would likely be disclosed to outside parties.  Dakota Beef would then be denied an adequate remedy, legal or equitable, because of

4

the inability to calculate the damages resulting from the breach of the employment agreement to a reasonable degree of certainty and the court's inability to otherwise provide a remedy if confidential information is disclosed to an improper party. The extent of the harm to Lively and Lively Foods if the temporary restraining order turns out to have been improperly granted is that Lively and Lively Foods will have been wrongly prevented from competing against Dakota Beef and partaking in an otherwise valid business venture.

In one respect, the potential harm to Lively and Lively Foods is greater than the harm to Dakota Beef because interfering with a new business is more likely to cause irreparable harm than interfering with an established business like Dakota Beef. This is because an established business is more likely to withstand a financial setback. And a new business is generally less capable of recovering from an injury to its reputation for failing to fulfill its orders. The potential harm to Lively and Lively Foods, however, is less than the potential harm to Dakota Beef because once confidential information is improperly disclosed to a third party, it is practically impossible for that information to return to being confidential and otherwise secure.

After balancing the harm to the parties if the temporary injunction were improperly granted or denied, the court finds that both parties are potentially exposed to substantial harm in the event that the temporary restraining order is improperly granted or denied. Nonetheless, the court finds that the balance

of the harm weighs slightly in favor of Dakota Beef because its potential harm is more likely to be incapable of being remedied by a monetary award.

### 3.    Likelihood of Success on the Merits

This factor requires the court to review whether Dakota Beef has "a fair chance of prevailing" on the merits.  See Heartland Acad. Comm. Church v. Waddle, 335 F.3d 684, 690 (8th Cir. 2003) (noting that the plaintiff was "not required to prove a mathematical (greater than fifty percent) probability of success on the merits" to demonstrate that the plaintiff had "a fair chance of prevailing" (citations omitted)).  Here, there is evidence that Dakota Beef and Lively entered into an employment agreement containing a confidentiality provision, a non-competition provision, and a non-solicitation provision.  These agreements are enforceable as long as they comply with South Dakota law.

Whether the non-solicitation and non-competition provisions are enforceable is governed by SDCL 53-9-11.  That statute states that "[a]n employee may agree with an employer . . . not to engage directly or indirectly in the same business . . . as that of his employer . . . and not to solicit existing customers of the employer within a . . . specified area for any period not exceeding two years from the date of termination[.]"  SDCL 53-9-11.  The non-solicitation and non-competition provisions both include a two-year applicable time period.  And the employment agreement specifically states that Dakota Beef conducts business on a national level.

There is evidence that Lively and Lively Foods are in direct competition with Dakota Beef because they have sold organic beef to one of Dakota Beef's customers. There is also evidence that Lively and Lively Foods have solicited one of Dakota Beef's pre-existing customers. These facts sufficiently demonstrate that Dakota Beef has a fair chance of prevailing on the merits.

Whether the confidentiality provision is enforceable is governed by a three-part test. See Raven Indus., Inc. v. Lee, 2010 WL 2414693, at *2 (S.D. June, 16, 2010) (citing 1st Am. Sys., Inc. v. Rezatto, 311 N.W.2d 51 (S.D. 1981)). "Non-disclosure agreements are unenforceable if: "(1) a trade secret or confidential relationship does not exist; (2) the employer discloses the information to others not in a confidential relationship; or, (3) it is legitimately discovered and openly used by others." Id. at *3 (internal quotations and citation omitted). If any part of the test is satisfied, the confidentiality provision is unenforceable, and Dakota Beef cannot be successful on the merits. Here, there is evidence that a confidential relationship existed between Lively and Dakota Beef. There is no evidence that the employer has disclosed any confidential information to someone who is not otherwise in a confidential relationship. And there is no evidence that the confidential information has been legitimately discovered and openly used by others. Because the non-disclosure agreement appears to be enforceable under Rezatto, the court finds that Dakota Beef has a fair chance of success on the merits with regard to the confidentiality provision. See Raven Indus., Inc., 2010 WL 2414693, at *4.

Based on the limited record, there is sufficient reason to find that Dakota Beef has a fair chance of prevailing on the merits with regard to the confidentiality provision, the non-competition provision, and the non-solicitation provision. Thus, the third factor weighs in favor of granting the temporary restraining order.

### 4.    Public Interest

The public has an interest in the enforcement of contractual agreements that are within the confines of the law. There is also a public interest in "fair competition by protecting confidential and secret information[.]" <u>Rezatto</u>, 311 N.W.2d at 57 (citation omitted). That interest is tempered with the understanding that "to the extent that the law protects confidential information, that information possess monopoly power." <u>Id.</u> (citation omitted). The court finds that this factor weighs slightly in favor of Dakota Beef because of the public's interest in enforcing the employment agreement.

### CONCLUSION

In weighing the four factors set out in <u>Dataphase</u>, the court finds that at this stage in the litigation, Dakota Beef has sufficiently demonstrated the need for a temporary restraining order. The court also finds that a hearing is required for purposes of determining whether a preliminary injunction is appropriate.

Accordingly, it is hereby

ORDERED that plaintiffs' motion for a temporary restraining order (Docket 10) is granted.

IT IS FURTHER ORDERED that Lively and Lively Foods are temporarily enjoined from disclosing any confidential information obtained from Dakota Beef as a result of Lively's employment with Dakota Beef.

IT IS FURTHER ORDERED that Lively and Lively Foods are temporarily enjoined from competing, either directly or indirectly, against Dakota Beef.

IT IS FURTHER ORDERED that Lively and Lively Foods are temporarily enjoined from soliciting any of Dakota Beef's customers as set out in the non-solicitation provision of Lively's employment agreement with Dakota Beef.

IT IS FURTHER ORDERED that plaintiff shall file with the clerk of court a cash or surety bond in the amount of $10,000 as security for this temporary restraining order.

IT IS FURTHER ORDERED that Dakota Beef's motion for a preliminary injunction is set for a hearing before the court on **Thursday, July 1, 2010, at 9 a.m.**, at 400 South Phillips Avenue, Courtroom 2, Sioux Falls, South Dakota.

Dated June 23, 2010.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE